IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHAWN WHITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:18-CV-_____ |
| | ) |
| BREMEN CASTINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES

Plaintiff, Shawn Whitt, by counsel, and for his Complaint for damages against Defendant Bremen Castings, Inc., states and alleges as follows:

### I.  NATURE OF THE ACTION

1. Shawn Whitt ("Whitt"), an individual with a qualified disability or perceived disability, brings this action against Defendant Bremen Castings, Inc. ("BCI") alleging that Bremen discriminated against Whitt because of his disability or perceived disability in contravention of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et. seq. ("ADA"), and Indiana Civil Rights Act, Ind. Code § 22-9-1-2 *et. seq.*

### II.  THE PARTIES

2. Shawn Whitt is a resident of St. Joseph County, Indiana presently residing at 5108 Sunnyfield Place, South Bend, IN 46619.

3. At all relevant times, Bremen Castings, Inc. was incorporated in the State of Indiana and had its principal place of business located at 500 N. Baltimore Street, Bremen, IN 46506.

## III.  JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Whitt was an "employee" as that term is defined by 42 U.S.C. § 12111(4).

6. BCI was an "employer" as that term is defined by 42 U.S.C. § 12111(5).

7. The acts of BCI's administrator's office, officers, managers, supervisors, employees or agents, are also the acts of BCI.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all events, transactions, occurrences, and material acts of BCI's administrators, officers, managers, supervisors, employees or agents, concerning the matter have arisen within the geographical environs of the Northern District of Indiana.

9. Whitt is bringing these proceedings within the time limits as identified in the Equal Employment Opportunity Commission right to sue letter, issued under mailing date of January 31, 2018.  A true and accurate copy of the aforesaid Equal Employment Opportunity Commission Right to Sue Letter is attached hereto, marked as Plaintiff's Exhibit "1," and made a part hereof.

10. Prior thereto Whitt timely initiated his Equal Employment Opportunity Commission proceedings by filing of a certain "Charge of Discrimination," as signed and filed by Whitt on July 13, 2017. The same "Charge of Discrimination" was also filed with the Indianapolis, Indiana Offices of the Equal Employment Opportunity Commission on the date of July 20, 2017. A true and accurate copy of Whitt's "Charge of Discrimination" is attached hereto, marked as Plaintiff's Exhibit "2," and made a part hereof.

## IV.  FACTUAL STATEMENT OF THE CLAIM

11. Whitt was employed by BCI from December 14, 2016 through June 15, 2017.

12. On February 15, 2017 Whitt was injured while working for BCI, specifically Whitt's right hand (his dominant hand) was injured while cutting a part with a table blast saw.

13. The work related injury was reported to the millroom leadman, Mike Woodruff, on February 16, 2017.

14. Whitt was taken to BCI's on-site wellness clinic, Activate Healthcare, for medical care.  He was seen by Rebecca M. Castro, FNP-BC.  Whitt was diagnosed with a strain to his right wrist, prescribed a wrist brace, placed on restricted duty, and ordered to follow up on February 20, 2017 with Nurse Castro.

15. From February 16, 2017 to February 27, 2017 Mr. Whitt was on restricted duty, and then released on February 27, 2017 to regular work without restriction.

16. On March 9, 2017 Whitt was given a positive performance evaluation.

17. On March 29, 2017 Whitt complained to BCI that he had numbness and swelling in his right hand, the same hand he had injured on February 15, 2017.

18. On March 30, 2017 Whitt filed an Indiana Worker's Compensation claim.

19. On April 3, 2017 Whitt was seen by William Rozzi, M.D., who referred Whitt to occupational therapy, and limited his lifting to 10 pounds.

20. After Whitt filed his Worker's Compensation claim and BCI was notified of his 10 pound lifting restriction, Whitt's supervisor began to call Whitt inappropriate and harassing names due to his Whitt's inability to use power tools. Specifically, Michael Woodruff called Whitt a "pussy" and attempted to force Whitt to use power tools with his non-dominant hand.

21. The Human Resources department for BCI had informed Whitt that they were willing to work with Whitt's disability and that if he needed additional time off he merely needed to ask human resources.

22. However, Whitt's manager would often threaten him with termination and made retaliatory moves with regard to Whitt's work status, including taking away Whitt's breaks.

23. On April 21, 2017 Whitt received a written performance deficiency notice from his supervisor, James Besser claiming he was not being productive and was taking extended bathroom breaks.

24. On June 5, 2017 BCI reduced Whitt's pay reducing his shift premium from $2.00 per hour to $0.50 per hour stating the reason for the change was: "he is not grinding due to work injury."

25. Just two days later, Whitt received a second written performance deficiency notice from Mr. Besser claiming Whitt failed to document his absence from work on June 3, 2017 and June 5, 2017.

26. On June 15, 2017 Whitt was issued a third written performance deficiency notice allegedly for poor work ethic and insubordination. Based on this third notice, BCI terminated Whitt's employment.

27. On June 22, 2017 BCI was informed Whitt was a surgical candidate for his hand injury, the diagnosis being triangular fibrocartilage tear.

28. BCI was aware as of February 16, 2017 of Whitt's injury, and as of April 3, 2017, of his work restrictions due to the injury.

29. While BCI's HR department made statements to Whitt that they were willing to accommodate Whitt on the job, Whitt's supervisor failed to do so.

30. In fact, Whitt's supervisor attempted to coerce Whitt into performing duties with his non-dominant hand placing Whitt in an unsafe work environment.

## V.  COUNT I- VIOLATION OF THE ADA

31. Plaintiff restates and realleges the allegations contained in paragraph 1 through 30 above as if fully stated herein.

32. At all times material hereto, Plaintiff was an employee and Defendant his employer, covered by and within the meaning of Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111(4) and (5)(a).

33. At all times material hereto, Plaintiff was and is a qualified individual within 42 U.S.C. § 12111(8).

34. Plaintiff's hand injury is a physical impairment that substantially limits one or more major life activity.

35. Plaintiff had a record of a physical impairment that substantially limited one or more major life activities.

36. Plaintiff injured his hand while working for Defendant.

37. Defendant was aware of Plaintiff's hand injury.

38. Defendant regarded Plaintiff's hand injury as a physical impairment that substantially limited one or more major life activities.

39. Plaintiff's disability, and/or record of disability, and/or perceived disability was a factor that made a difference in Defendant's decision to harass Plaintiff, reduce his pay, write him up, and then terminate his employment.

40. The action of Defendant was intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

41. As a direct and proximate result of Defendant's violation of Plaintiff's rights as alleged, Plaintiff's terms, conditions, and privileges of employment was adversely affected.

42. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, physical and emotional distress, and humiliation and embarrassment.

### VI.  COUNT II- RETALIATION IN VIOLATION OF THE WORKER'S COMPENSATION ACT (WCA)

43. Plaintiff restates and realleges the allegations contained in paragraph 1 through 42 above as if fully stated herein.

44. Plaintiff filed a claim for Worker's Compensation benefits.

45. Defendant was aware that Plaintiff filed a claim for Worker's Compensation benefits.

46. Plaintiff's filing of a worker's compensation claim was a protected activity.

47. Defendant retaliated against and terminated Plaintiff because he filed a claim for Worker's Compensation benefits, in violation of Ind. Code § 22-3-1-1 *et. seq*.

48. Plaintiff's claim for Worker's Compensation benefits was the motivating factor behind Defendant's decision to harass Plaintiff, reduce Plaintiff's pay, write up Plaintiff, and, ultimately, terminate Plaintiff.

49. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages, including but not limited to, loss of earnings

and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, physical and emotional distress, and humiliation and embarrassment.

## VII.  COUNT III- VIOLATION OF INDIANA CIVIL RIGHTS ACT

50. Plaintiff restates and realleges the allegations contained in paragraph 1 through 49 above as if fully stated herein.

51. Plaintiff was an employee as defined by Ind. Code § 22-9-1-3(i).

52. Defendant was an employer as defined by Ind. Code § 22-9-1-3(h).

53. Defendant discriminated against Plaintiff by refusing to reasonably accommodate Plaintiff's disability, by harassing and retaliating against him, by creating a hostile environment, demoting and terminating him because of his disability.

54. Defendant's actions constitute discriminatory practices as defined by Ind. Code § 22-9-1-3(l).

55. As a direct and proximate result of Defendant's discriminatory practices, Plaintiff has sustained injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, physical and emotional distress, and humiliation and embarrassment.

## VIII.  RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Shawn Whitt demands judgment against Defendant as follows:

1. Compensatory damages in whatever amount he is found to be entitled;

2. Exemplary and punitive damages in whatever amount he is found to be entitled;

3. A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

4. An award of pre- and post- judgment interest, costs and reasonable attorney fees.

Respectfully submitted,

/s/ Michael P. Misch
Michael P. Misch                (27970-71)
Stephanie L. Nemeth            (25721-71)
ANDERSON, AGOSTINO & KELLER, P.C.
131 S. Taylor Street
South Bend, IN 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
E-mail: misch@aaklaw.com
E-mail: nemeth@aaklaw.com

*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury.

<pre>
                                /s/ Michael P. Misch
                                Michael P. Misch         (27970-71)
</pre>